# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

JAMES E. LUNDEEN, SR., M.D.,

    **Plaintiff,**

v.

    **Case No.: 2:11-cv-363**
    **JUDGE SMITH**
    **Magistrate Judge King**

STEPHEN P. BUEHRER, *et al.*,

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Summary Judgment (Doc. 12); Defendants Richard Michael DeWine and the Office of the Attorney General, State of Ohio's Motion to Dismiss (Doc. 14); and Defendant Stephen Buehrer's Motion to Dismiss for Lack of Jurisdiction (Doc. 15); Plaintiff's Motion to Strike and Motion for Default Judgment (Doc. 16); Plaintiff's Objection and Motion to Strike (Doc. 18); and Plaintiff's Motion for Declaratory Judgment (Doc. 30). Responses and replies have been filed to the aforementioned motions and they are now ripe for review. For the reasons that follow, the Court **GRANTS** Defendants' Motions to Dismiss and **DENIES** Plaintiff's Motion to Strike. All the other motions are denied as moot.

### I. BACKGROUND

In Plaintiff's *pro se* Complaint[1], he alleges that Defendant Stephen P. Buehrer,

---

[1] Lundeen has also filed numerous other lawsuits with regard to the facts of this case. He has filed a matter in Ohio Common Pleas Court, purportedly an "appeal" from the Bureau's revocation of his certificate, even though no hearing has yet been held. *Lundeen v. Buehrer*, Franklin County Court of Common Pleas, Case No. 11CV 4590. In addition, he has filed suit in federal court against at least one of the Ohio Common Pleas judges who issued one of the search warrants of which he complains. *Lundeen v. Ridge*, United States District Court for the Northern District of Ohio, Case No. 2:11 CV 430.

Administrator of the Ohio Bureau of Workers' Compensation, in both his personal and official capacities, and the Ohio Bureau of Workers' Compensation, a state agency (hereinafter "Bureau Defendants"), violated Plaintiff's civil rights "in the form of a retaliatory investigation of the undersigned Plaintiff, with the hope of prosecution, for the undersigned Plaintiff having exercised his First Amendment right of free speech and right to petition the government for redress of grievances, the undersigned Plaintiff having filed a Writ of Mandamus against Ohio Bureau of Workers' compensation in 2008 not ultimately concluded until 2011." (Compl. ¶ 2). Plaintiff also raises a similar claim against the Office of the Attorney General and the Ohio Attorney General Richard Michael aka "Mike" DeWine in both his personal and official capacities (hereinafter AG Defendants).

Plaintiff Dr. Lundeen filed a Petition for a writ of mandamus against the BWC in the Ohio Supreme Court in 2008, alleging that the Bureau of Workers' Compensation ("BWC") abused its discretion and to force the BWC to abide by the "clean claim" laws. Plaintiff alleged that the BWC used "dirty tricks" software to reject otherwise proper claims for medical reimbursement. (Compl. ¶¶ 1-2). The mandamus case was dismissed due to a "small technical procedural error," and so was never heard on the merits. (*Id.*, ¶¶ 4, 7). Following the dismissal, Plaintiff alleges that he "became aware" that he was under surveillance by automobiles with darkly-tinted windows. (*Id.*, ¶ 7). Then, to prevent him from re-filing his mandamus case or taking other legal action against the BWC, the BWC "orchestrated" a raid on his various medical offices. (*Id.*, ¶ 9).

According to the Complaint, "Defendants 1, 2, 3, 4, 5, and 6" secured search warrants based upon unspecified false statements made by unidentified individuals, and proceeded to execute the search warrants on March 15 and 16, 2011. (*Id.*, ¶ 8). During the execution of the warrants, unidentified "investigators" removed items beyond the scope of the search warrants. (*Id.*). Finally, the Complaint alleges in conclusory fashion that the Defendants had "no probable cause or legitimate reason to investigate him," and claims that he believes they are attempting to fabricate evidence because since the raids he has experienced an increase in walk-in patients

seeking treatment. (*Id.*, ¶ 31).

Plaintiff Lundeen generally asserts that the Defendants violated his constitutional rights, primarily in retaliation for exercising his First Amendment rights in having filed a mandamus action in Ohio state court against the Bureau in 2008. In general, Lundeen asserts that the Bureau Defendants violated his rights in two ways. First, he alleges that the Bureau, in concert with others, conducted an improper search and seizure on three of his offices, and second, he alleges that the Bureau improperly revoked his certificate to participate in the Bureau's Health Partnership Program ("HPP"). He alleges that he has a right to a hearing to challenge the decertification, and that, in violation of various laws and constitutional provisions, as of the date of the Complaint, none had been scheduled. Plaintiff requested a hearing within the time indicated on the Bureau's decertification letter. He also requested that the Bureau subpoena various persons for the hearing, including Defendant Attorney General. Plaintiff also asserts that he has not been supplied with evidence for the decertification, despite repeated demands. (Compl. ¶ 14).

Plaintiff asserts that he was contacted soon after the Bureau decertified him by Ron Meade of the Bureau, and discussed his entitlement to a hearing within 7 to 10 days. He further asserts that Mr. Meade wanted to set the hearing for April 21 or 28, 2011. A short time later, he received two letters in one envelope, one setting the hearing for April 6, 2011, and the other continuing the hearing. Plaintiff alleges that he sent Ron Meade numerous e-mails and Mr. Meade has not responded to his e-mails. (Compl. ¶ 15). Plaintiff asserts that the failure to set a hearing violates his due process rights and that the actions of Defendants are also intended to interrupt Lundeen's cash flow to prevent him from defending himself. (Comp. ¶ 20). Plaintiff asserts that the reasons given for decertification are "vague falsehoods" and asserts rebuttals for each one. He also asserts that the search warrants claimed to be looking for evidence of workers' compensation fraud, telecommunications fraud and theft, but that none of these was given as a reason for decertification. (Compl. ¶ 22- 23). In addition, Plaintiff Lundeen asserts that the Defendants do not want the warrants and supporting affidavits to be unsealed because they do not

want "the falsehoods therein to be exposed."  (Compl. ¶ 26).

Plaintiff alleges that after the raid "there was a sudden occurrence of people attempting to 'walk in'" to Lundeen's office "without appointments."  He alleges that he does not historically take walk-ins, and asserts that the defendants are "attempting to plant false information."  Finally, he asserts that he has filed for an "emergency TRO" in the Franklin County Court of Common Pleas that has not been heard.  (Compl. ¶ 31-32).  Plaintiff Lundeen requests $25 million in damages for these actions, as well as "any other equitable relief deemed appropriate by this Court."

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a lawsuit for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion to dismiss is directed solely to the complaint and any exhibits attached to it.  *Roth Steel Prods. v. Sharon Steel Corp.*, 705 F.2d 134, 155 (6th Cir. 1983).  The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim.  Consequently, a complaint will be dismissed pursuant to Rule 12(b)(6) only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief.  *See Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978).  Rule 12(b)(6) must be read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure, which requires the complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]"

A court, in considering a 12(b)(6) motion to dismiss, must "construe the complaint in the light most favorable to the plaintiff," accepting as true all the plaintiff's factual allegations.  *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  Although in this context all of the factual allegations in the complaint are taken as true, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

Furthermore, to survive dismissal pursuant to Rule 12(b)(6), a claim must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Twombly*, at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, at 1950. While a complaint need not contain "detailed factual allegations," its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, at 555. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.' " *Iqbal*, at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). In the final analysis, the task of determining plausibility is "context-specific [and] requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III. DISCUSSION

The Bureau Defendants move to dismiss asserting that the Court lacks jurisdiction over the money claims as against Bureau and the Administrator in his official capacity under the Eleventh Amendment. The Bureau Defendants also argue that the claims against the Administrator in his personal capacity should be dismissed under *Younger v. Harris*, 401 U.S. 37 (1971), and based on qualified immunity.[2]

Similarly, the AG Defendants also move to dismiss asserting that Plaintiff's claims against the State of Ohio for money damages are barred by the Eleventh Amendment and any claims against Mike DeWine in his personal capacity should be dismissed as he has qualified immunity.

The Court will first address Defendants' Motions to Dismiss because the motions question

---

[2] Plaintiff moves to strike the Bureau Defendants' Motion to Dismiss arguing that it was not properly served upon him (Doc. 16). Despite Plaintiff's assertions in his Motion that he was not served with the Motion to Dismiss, he was clearly aware of it when he filed his Motion to Strike on June 1, 2011, 5 days after the filing of Defendants' Motion. Therefore, the Court finds that Plaintiff was not prejudiced by the incorrect certificate of service and denies his Motion to Strike and for Default Judgment.

whether Plaintiff's claims can even be addressed on the merits by this Court. If the Court finds that the claims are properly before this Court, then it will address Plaintiff's Motion for Summary Judgment and other pending motions.

**A.     Eleventh Amendment**

The State of Ohio Defendants, including the Bureau of Workers' Compensation, the Administrator of BWC in his official capacity, the State of Ohio, and Ohio Attorney General Mike DeWine in his official capacity, argues that they enjoy absolute immunity under the Eleventh Amendment in connection with claims for money damages brought against them in their official capacities. Plaintiff, however, appears to be arguing that the State Defendants are not entitled to absolute immunity because they acted in bad faith and because they are defending their interests in this case.

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. As originally drafted, the Eleventh Amendment referred to suits brought against a state by out-of-state foreign citizens. *Jackie S. v. Connelly*, 442 F. Supp. 2d 503, 513 (S.D. Ohio 2006). In 1890, however, the Supreme Court held the amendment barred in-state as well as out-of-state citizens from suing a state. *Hans v. Louisiana*, 134 U.S. 1, 16 (1890). Therefore, the Amendment is a bar to federal court jurisdiction whenever any private citizen attempts to sue a state. *Id.* "[A] federal court cannot direct a state official to conform his or her conduct to state law . . . ." *Cummings v. Husted*, 2011 WL 2375282, at *10 (S.D. Ohio June 8, 2011). The United States Supreme Court has held that "[I]n the absence of consent, a suit in which the state or one of its agencies or departments is named as the defendant is also prescribed by the Eleventh Amendment . . .. This jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100-01 (1984). Further, the Eleventh Amendment bars a suit in federal court against state officials when "the state is the real, substantial party in

interest." *Id.* at 101. "[A] suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Id.* at 102.

Plaintiff relies on *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002), in support of his argument that the State Defendants have waived their immunity to suit in federal court. However, Plaintiff's argument is without merit as the *Lapides* Court held that a state entity that voluntarily submits itself to federal jurisdiction has waived its immunity. The State Defendants did not voluntarily submit themselves to federal jurisdiction, but rather were sued directly in federal court and are therefore here involuntarily.

Therefore, in accordance with the well-established law, Plaintiff's claims against the State of Ohio and the Bureau of Workers' Compensation are barred under the Eleventh Amendment. Further, because Plaintiff's claims against the Administrator of the Bureau of Workers' Compensation and Ohio Attorney General Mike DeWine in their official capacities are essentially claims against the state, those claims are also barred under the Eleventh Amendment.

**B.     Younger Abstention**

The Bureau Defendants argue that if Plaintiff's Complaint is construed to request prospective injunctive relief, then the Court must abstain from deciding it against all the Bureau Defendants under *Younger v. Harris*, 401 U.S. 37 (1971) and *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). The *Younger* abstention doctrine, as established and extended by the United States Supreme Court, prohibits federal courts from issuing injunctions that serve to interfere with state criminal and civil proceedings. *See Younger*, 401 U.S. at 43, 46 (addressing interference with state criminal proceedings); *Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) (extending *Younger* to state civil proceedings). The doctrine also prevents federal courts from interfering with certain state administrative proceedings. *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 627 (1986); *see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 433 n.12 (1982).

A federal court must consider three factors in determining whether abstention is

appropriate: "(1) whether the underlying proceedings constitute an ongoing judicial proceeding, (2) whether the proceedings implicate an important state interest, and (3) whether there is an adequate opportunity in the state proceedings to raise a constitutional challenge." *Fieger v. Cox*, 524 F.3d 770, 775 (6th Cir. 2008); *see also Gilbert v. Ferry*, 401 F.3d 411, 419 (6th Cir. 2005).

In addition, under the *Burford* abstention, where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or order of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in the case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 361 (1989), citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976).

Defendants argue, and the Court agrees, that there is an ongoing state administrative action. Plaintiff Lundeen requested a hearing on the Bureau's decision to revoke his HPP certificate. A hearing date was initially set and then cancelled. Follow up letters request Plaintiff to select a hearing date that works best with his schedule, giving him the option of April 21 or April 28, 2011. Rather than selecting a hearing date, Plaintiff filed this lawsuit on April 27, 2011. Therefore, the hearing process had begun at the time this lawsuit was filed and is ongoing.

Next, the Court must consider whether the proceedings implicate an important state interest. Here, the hearing before the Bureau involving Plaintiff's HPP certification and the Bureau's administration of that program, implicate an important state interest. The administration of this program is important to Ohio's workers' compensation program as a whole. The HPP regulates who can and cannot be a provider of services to injured workers in Ohio and it is crucial that the Bureau be able control the quality of health care for injured workers, who may be vulnerable.

The final element of the inquiry is whether Plaintiff has an adequate opportunity to raise constitutional challenges in the pending state proceedings. This Court concludes that he does. Under Ohio Revised Code Section 119, Plaintiff has access to an administrative process that is judicial in nature. He is entitled to a hearing and an appeal to Ohio's court system. Ohio Revised Code Section 119.12 specifically provides for Plaintiff to assert any constitutional claims he has against the Bureau Defendants, whether they arise from the HPP hearing process itself, or from other claims Plaintiff may have, such as his allegations of the unlawful raid on his business.

Plaintiff appears to be arguing that the Bureau Defendants attempt to schedule a hearing is a sham, that they had no intention of holding a hearing. He appears to base this argument on the fact that the first scheduled hearing was rescheduled. He also appears to be arguing that proceeding with the hearing process would be futile. The Court disagrees. As set forth above, the administrative hearing process had begun at the time Plaintiff initiated this lawsuit and he can assert any constitutional claims he has against the Bureau Defendants during that hearing and subsequent appeal to Ohio's state courts. Accordingly, the Court concludes that if Plaintiff's claims against the Bureau Defendants could be construed as seeking injunctive relief, then abstention is appropriate under *Younger*.

**C.     Qualified Immunity**

Defendants next argue that, to the extent that federal claims for monetary damages are asserted against the Administrator of the BWC and Ohio Attorney General Mike DeWine in their individual capacities, they are entitled to qualified immunity.

Under the doctrine of qualified immunity, government officials performing discretionary functions are immune from suit unless the plaintiff shows the official violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Conn v. Gabbert*, 525 U.S. 286, 290 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The central purpose of affording public officials qualified immunity from suit is to protect them 'from undue interference with their duties and from potentially disabling threats of liability.'"

*Elder v. Holloway*, 510 U.S. 510, 514 (1994) (quoting *Harlow*, 457 U.S. at 806)).

The Court must apply a two-step test to determine whether qualified immunity protects a government official. *Conn*, 526 U.S. at 290; *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1358 (6th Cir. 1996). The first step is to determine whether a violation of a clearly established constitutional right has occurred. *Conn,* 526 U.S. at 290; *Dickerson v. McClellan*, 101 F.3d 1151, 1157 (6th Cir. 1996). If a constitutional violation is found, the second step is to determine whether an objectively reasonable public official in the circumstances would have recognized that his conduct violated the clearly established constitutional right. *Conn*, 526 U.S. at 290; *Buchanan*, 99 F.3d at 1358; *Dickerson*, 101 F.3d at 1158.

To be clearly established at the time of the conduct in question, the constitutional right must have been recognized by the U.S. Supreme Court, the United States Court of Appeals for the Sixth Circuit, this Court or other courts within the Sixth Circuit, or, in some cases, courts of other circuits. *Sheets v. Moore*, 97 F.3d 164, 166 (6th Cir. 1996); *Dickerson*, 101 F.3d at 1158. "The contours of the right must be sufficiently clear that a reasonable person would understand that what he is doing violates that right." *Sheets*, 97 F.3d at 166. "This is not to say that an official action is protected by qualified immunity unless the very action has previously been held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The United States Supreme Court held in *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009), that qualified immunity balances two important interests–the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably.

**1. Stephen Buehrer**

Plaintiff alleges that Buehrer, the Administrator of the BWC, engaged in two courses of action that resulted in constitutional violations: the HPP certification revocation; and the "raid" on Plaintiff's offices. With respect to the HPP certification issue, Plaintiff does not allege that

Buehrer had any direct involvement in the decision to revoke Plaintiff's certification, other than merely serving as Administrator of the BWC. None of the letters Plaintiff received from the BWC were signed by the Administrator, and there is no allegation that the Administrator directly supervised or directed any of the actions taken by the BWC personnel who composed, signed, or sent the letters, scheduled the hearing, or made the determination to revoke Plaintiff's HPP certification.

Similarly, with respect to the "raid," Plaintiff fails to allege that Buehrer personally obtained the search warrant, or carried out the search of Plaintiff's offices. Rather, Plaintiff specifically alleges that the raid was "orchestrated by the OBWC." (Compl. ¶ 9).

Plaintiff, therefore, has failed to allege a violation of a clearly established constitutional right by Defendant Buehrer and Defendant Buehrer is entitled to qualified immunity from Plaintiff's claims against him in his personal capacity.

### 2. Mike DeWine

The only allegation in Plaintiff's Complaint that specifically references Mike DeWine is that he was physically "on site" during the search of the Plaintiff's Portsmouth office "where there was in fact nothing to see." (Compl. ¶ 17). The Complaint does not set forth any additional allegations that DeWine personally committed any constitutional violations.

Plaintiff's allegation that DeWine was present during the search of his office is not sufficient to establish a constitutional violation. The Sixth Circuit has emphasized that "[i]t is not enough for a complaint . . . to contain mere conclusory allegations of unconstitutional conduct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings." *Maxwell v. Federal Correctional Inst.*, 43 Fed. Appx. 824, 825 (6th Cir. 2002); *see also Fennell v. Gregory*, 2011 U.S. App. LEXIS 1954, *5 (9th Cir. 2011) ("Sweeping conclusory allegations will not suffice. . .. The [plaintiff] must set forth specific facts as to each individual defendants' causal role in the alleged deprivation of constitutional rights.").

Plaintiff's Complaint generally alleges that the search warrants were signed based on false

statements, but does not identify what the supposed falsehoods in the warrant applications were, or who made them. Likewise, the Complaint alleges that the "investigators" exceeded the scope of the warrant, but fails to identify who these individual actors were. Plaintiff's Complaint does not allege that Mike DeWine personally swore out affidavits for search warrants or personally searched Plaintiff's office. Not only does Plaintiff's Complaint fail to state a claim against Mr. DeWine under *Iqbal*, 129 S. Ct. at 1948, but Plaintiff has also failed to allege a violation of a clearly established constitutional right by Defendant DeWine, and therefore, Defendant DeWine is entitled to qualified immunity from Plaintiff's claims against him in his personal capacity.

## IV. CONCLUSION

Based on the above, the Court **DENIES** Plaintiff's Motion for Summary Judgment (Doc. 12); **GRANTS** Defendants Richard Michael DeWine and the Office of the Attorney General, State of Ohio's Motion to Dismiss (Doc. 14); **GRANTS** Defendant Stephen Buehrer's Motion to Dismiss for Lack of Jurisdiction (Doc. 15); **DENIES** Plaintiff's Motion to Strike and Motion for Default Judgment (Doc. 16); **DENIES AS MOOT** Plaintiff's Objection and Motion to Strike (Doc. 18); and **DENIES AS MOOT** Plaintiff's Motion for Declaratory Judgment (Doc. 30).

The Clerk shall remove Documents 12, 14, 15, 16, 18, and 30 from the Court's pending motions list.

The Clerk shall enter final judgment in favor of Defendants and remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

*/s/ George C. Smith*
**GEORGE C. SMITH, JUDGE
UNITED STATES DISTRICT COURT**